IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTHONY WILLIAMS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. CCB-19-887 |
| CORIZON, | * | |
| | * | |
| Defendant. | | |

\*\*\*

## MEMORANDUM OPINION

Self-represented plaintiff Anthony Williams brings this civil action pursuant to 42 U.S.C. § 1983 against Corizon, LLC ("Corizon"). Complaint, ECF No. 1. In his unverified Complaint, Williams asserts a violation of his constitutional rights arising from Corizon's alleged failure to provide timely and adequate medical care for a hand injury he sustained while he was incarcerated at the Prince George's County Correctional Center ("PGCCC") in Upper Marlboro, Maryland. *Id.* He seeks compensatory damages. Supplement, ECF No. 6.

On September 5, 2019, Corizon filed a Motion to Dismiss or Alternatively for Summary Judgment. ECF No. 16. Williams was informed by the court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to file a response in opposition to Corizon's motion could result in dismissal of the Complaint. ECF No. 17. Williams filed nothing further.

A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2018). Corizon's motion, construed as a motion for summary judgment, will be granted.

### Background

**I.    Williams's Allegations**

Williams alleges that on February 17, 2019, while incarcerated at PGCCC, he was involved in an altercation with another inmate during which time he severely injured his finger. Complaint

at 1, ECF No. 1.  Williams was taken to the medical unit where he was assessed with a sprain and given Tylenol 3 before being taken to Unit 5 ("the hole").  *Id.*  Williams believed that his finger was broken, and despite his complaints, he was not taken to a hospital.  *Id.*  X-rays were taken on the following day and Williams was given Naproxen, which made him feel like he was having a heart attack.  *Id.* at 1-2.

As of February 21, 2019, Williams remained in the hole and his finger was swollen three times the normal size.  *Id.* at 1.  On February 22, 2019, Williams was unable to sleep due to pain and he was taken to a court proceeding with a disfigured finger.  *Id.* at 1-2.  As of February 23, 2019, he was still awaiting the results of his x-ray.  *Id.* at 2.

On February 25, 2019, Williams saw a bone specialist who asked why he took so long to get treatment.  *Id.* at 2.  The specialist took x-rays and concluded that Williams's finger was severely dislocated.  *Id.*  The specialist also noted that due to the delay, Williams may need surgery to insert a metal pin.  *Id.*

On February 26, 2019, hand surgery was performed.  *Id.* at 3.  According to Williams, the correctional officers rushed him out of the surgical unit before he could receive his prescription, claiming that Williams had declined the medication when he awoke from anesthesia.  *Id.*

Williams filed suit on March 22, 2019, asserting a violation of his rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; Section 504 of the Rehabilitation Act, 19 U.S.C. § 701 *et seq.*; and construed liberally, 42 U.S.C. § 1983.  ECF No. 1.  In a supplement to the Complaint, Williams also alleges medical malpractice and neglect.  ECF No. 6.

**II.     Corizon's Response**

In support of its motion, Corizon has submitted copies of Williams's medical records for

the time period in question. Medical Records, ECF No. 16-3. The records reflect that at approximately 12:39 p.m. on February 17, 2019, Williams was seen in the PGCCC medical unit following an altercation. *Id.* at 6. The attending nurse noted that Williams had swelling in the left ring finger. *Id.* She notified Dr. Meskerem Asresahegn, the provider on call, who instructed her to order an x-ray as well as the anti-inflammatory Naproxen and Tylenol 3, a narcotic pain reliever. *Id.* at 6-7; Decl. of Asresahegn at ¶ 13, ECF No. 16-2.

On February 18, 2019, Williams had an x-ray of his left hand, which revealed a displacement of the 4th proximal interphalangeal joint ("PIP") joint with no gross acute fracture. ECF No. 16-3 at 31. Because the injury could cause restriction of the joint movement, Dr. Asresahegn referred Williams to an orthopedist. ECF No. 16-2 at ¶¶ 7-8. According to Dr. Asresahegn, there was no reason to send Williams to the hospital immediately because surgery would not have taken place that soon. *Id.* at ¶ 8. Rather, Williams was scheduled for orthopedics promptly and was able to obtain an appointment much sooner than the normal wait time. *Id.*

On February 20, 2019, Williams refused his Naproxen. ECF No. 16-3 at 54. In Dr. Asresahegn's review of the medical record, she did not see any complaint by Williams that Naproxen was making his heart race or causing any other side effect. ECF No. 16-2 at ¶ 9.

Dr. Asresahegn saw Williams for the first time regarding his finger on February 21, 2019. ECF No. 16-3 at 8-9. By that time, he had received the x-ray results and was already scheduled to see an orthopedist. *Id.* at 8. On examination, Williams was alert and oriented and in mild pain/distress. *Id.* He told Dr. Asresahegn that he could be released the next day, and Dr. Asresahegn directed him to follow up with an orthopedist as he might need surgery. *Id.* at 9.

On February 25, 2019, Williams saw a nurse in anticipation of surgery. *Id.* at 10. The nurse noted that Williams's left ring finger was swollen and appeared dislocated. *Id.*

On February 26, 2019, orthopedist Dr. Joseph Crowe performed open reduction and internal fixation ("ORIF") surgery to repair the PIP fracture. *See id.* at 30. Williams received ibuprofen that day for pain, and on the following day, Dr. Asresahegn prescribed Tylenol 3 for one week. *Id.* at 53. According to Dr. Asresahegn, Williams needed an ORIF procedure not because of any delay, but because of the nature and location of the fracture. ECF No. 16-2 at ¶ 8.

On March 18, 2019, Williams saw Dr. Asresahegn for a follow-up. ECF No. 16-3 at 16-17. At that time, his left hand was in a cast, but he was able to move all of his fingers. *Id.* at 17.

On March 26, 2019, Williams saw Dr. Crowe to have the pin removed from his hand. *See id.* at 49. On April 8, 2019, he had a follow-up appointment with Dr. Crowe, who instructed him to perform hands on exercise after warm soaks and to apply ice after exercise. *Id.* at 35. Williams continued to receive pain medication through April 2, 2019. *Id.* at 52-54, 57-58, 62.

On May 1, 2019, Williams saw a nurse for a diet triage and denied any medical concern. *Id.* at 23. On June 11, 2019, he had a sick call visit with Dr. Asresahegn. *Id.* at 69-70. At that time, Williams was able to use his left hand but continued to have his left 4th digit flexion deformity despite the surgery. *Id.* at 69. He was in no pain or distress and asked to be cleared for work. *Id.*

**Standard of Review**

Corizon's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450

(4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Hous., LLC v. The City of Salisbury, Maryland*, 672 F. App'x. 220, 222 (4th Cir. 2016) (per curiam).  But, when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

Because Corizon filed a motion titled "Motion to Dismiss or Alternatively for Summary Judgment," along with documents in support, Williams was on notice that the court could treat the motion as one for summary judgment and rule on that basis.  *See id*.  Although Williams was notified of Corizon's filing, he did not file a response in opposition, nor did he submit additional materials.  Therefore, the court will construe the motion as one for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). Submissions by *pro se* plaintiffs must be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But the court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

## Analysis

### I. Eighth Amendment Claim

Williams alleges that Corizon has denied him adequate medical care. To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendant, or its failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*,

6

825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr*., 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk

from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

Here, even assuming that Williams's hand injury was sufficiently severe that it created a serious medical need for Eighth Amendment purposes, the record does not support a finding that Corizon acted with deliberate indifference to that need. Immediately after he suffered the hand injury, Williams was taken to the medical unit for assessment. At that time, the attending nurse examined Williams and contacted the provider on call, who in turn ordered an x-ray and pain medication. The x-ray was performed the next day, and within four days of the injury, an appointment with the orthopedist was scheduled. Williams underwent surgery just nine days after dislocating his finger, and he was given pain medication both before and after the procedure.

Viewing the evidence in the light most favorable to Williams, there is no indication that Corizon staff ignored his hand injury. Subjectively, the nine-day delay in receiving surgery did not amount to an act or omission "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. *See Estelle*, 429 U.S. at 105-06. As Dr. Asresahegn explained, there was no reason to send Williams to the hospital immediately because surgery would not have taken place that soon. As previously indicated, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir.1970)). Therefore, Williams has not shown that Corizon exhibited a callous disregard for his serious medical need, *see Estelle*, 429 U.S. at 105-06, and Corizon is entitled to summary judgment on this claim.

## II.     Respondeat Superior

Williams makes no direct allegations against Corizon. Instead, it appears that he seeks to

hold Corizon liable for the actions of its employees. It is well established, however, that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no respondeat superior liability under § 1983). Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Williams has failed to plead or demonstrate sufficient facts showing supervisory indifference to, or tacit authorization of, any misconduct by Corizon's employees. As discussed above, Williams failed to show that his Eighth Amendment rights were violated in connection with his medical care. Accordingly, he has necessarily failed to demonstrate that Corizon authorized or was indifferent to any such violation. Williams's assertions do not demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983

liability. *See id.* ("Generally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse."). Therefore, Corizon is entitled to summary judgment on this ground as well.

### III. ADA & Rehabilitation Act

In his Complaint, Williams summarily states that he is concerned about his disability rights under Section 504 of the Rehabilitation Act and the ADA. ECF No. 1-1. The Rehabilitation Act and ADA generally are construed "to impose the same requirements due to the similarity of the language of the two acts." *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468 (1999) (citing *Rogers v. Dep't of Health, Envt'l Control*, 174 F.3d 431, 433-34 (4th Cir. 1999)). "Congress has directed courts 'to construe the ADA to grant at least as much protection as provided by the regulations implementing the Rehabilitation Act.'" *Id.* (quoting *Bragdon v. Abbott*, 524 U.S. 624, 632 (1998)). Therefore, the standards applied are the same for both Acts, except with regard to the element of causation. *Class v. Towson Univ.*, 806 F.3d 236, 244 n.2 (4th Cir. 2015). Under the Rehabilitation Act, a plaintiff must establish that he was excluded solely by reason of his disability, while the ADA requires only that the disability was a motivating cause of the exclusion. *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461-62 (4th Cir. 2012) (citing *Baird*, 192 F.3d at 468-69). To establish a prima facie case under Title II of the ADA or the Rehabilitation Act, the plaintiff must show that: (1) he/she has a disability; (2) he/she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) the exclusion, denial of benefits, or discrimination was by reason of the disability. *See Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502-03 (4th Cir. 2016) (citing *Constantine v. George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)); *Baird*, 192 F.3d at 467.

Here, Williams has not established that he has a disability, nor has he shown that he was excluded or denied benefits. Therefore, his claims under Section 504 and the ADA fail.

### IV. Negligence Claims

To the extent that Williams also brings medical negligence claims, the court declines to exercise supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(c) (stating that a district court "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."). "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-27 (1966)). These claims are dismissed without prejudice.[1]

### Conclusion

Corizon's Motion to Dismiss or Alternatively for Summary Judgment, construed as a motion for summary judgment, is granted. A separate Order follows.

____9/8/20_____  
Date

_____/S/_____  
Catherine C. Blake  
United States District Judge

---

[1] To sustain a medical malpractice claim in state court, Williams must adhere to the Maryland Health Care Malpractice Claims Act, Md. Code Ann., Cts. & Jud. Proc. § 3-2A-01, *et seq.*, which requires a plaintiff to file medical negligence claims with the Health Care Alternative Dispute Resolution Office prior to filing suit when the claim for damages exceeds the jurisdictional amount for the state district courts. *See id.* at § 3-2A-02; *see also Roberts v. Suburban Hosp. Assoc., Inc.*, 73 Md. App. 1, 3 (1987).